## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

**DONALD RICKARD**                                                    **PLAINTIFF**

**v.**                            **Case No. 3:12-cv-00057 KGB**

**SWEDISH MATCH NORTH AMERICA, INC.**                    **DEFENDANT**

### OPINION AND ORDER

Plaintiff Donald Rickard brings this action against Swedish Match North America, Inc. ("SMNA"), under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, as amended by 42 U.S.C. § 6101 (the "ADEA") and 42 U.S.C. § 2000e *et seq.* ("Title VII"), for hostile work environment based on age and sex, constructive discharge, disparate treatment based on age, retaliation, and breach of contract.  SMNA filed a motion for summary judgment (Dkt. No. 36).  Mr. Rickard responded (Dkt. No. 43), to which SMNA replied (Dkt. No. 50). Mr. Rickard also filed a sur reply (Dkt. No. 63) after the Court granted his motion for leave to do so (Dkt. No. 53).  For the reasons that follow, SMNA's motion for summary judgment is granted in its entirety.   Mr. Rickard's hostile work environment, constructive discharge, disparate treatment, and retaliation claims are hereby dismissed.  Further, Mr. Rickard now concedes his breach of contract claim, and, therefore, that claim also is dismissed.

### I.      Factual Background

The following facts are undisputed and taken from SMNA's statement of material facts as to which it is contended there is no genuine dispute to be tried (Dkt. No. 38), Mr. Rickard's statement of material facts in dispute (Dkt. No. 45), and SMNA's reply to Mr. Rickard's statement of material facts in dispute (Dkt. No. 51), unless otherwise specified by citation.

SMNA manufactures, distributes, and sells tobacco products, such as snuff, chewing tobacco, and cigars. From July 8, 1984, until he retired at 55 years old on April 28, 2011, Mr. Rickard was employed by SMNA, or its predecessors in interest, as a territory representative ("TR"), which is a sales position. TRs report to a retail team manager ("RTM"), who supervises several TRs at once. As a TR, Mr. Rickard's primary responsibilities, as set forth in his job description, included making personal calls upon a variety of retail accounts—such as tobacco shops, convenience stores, and chain stores—to sell product and displays. Additionally, Mr. Rickard was tasked with picking up any out of date product and replacing it with fresh product. Mr. Rickard was required to record detailed data points regarding most of his TR activities, including calls made and product distributed. The parties agree that these data points were used annually to evaluate Mr. Rickard's performance. Mr. Rickard, however, argues the evaluation process was subjective and arbitrary and could be manipulated. SMNA disputes this.

On November 5, 2007, SMNA hired Perry Payne, who is approximately one year younger than Mr. Rickard, as the RTM for the Arkansas District. Mr. Payne had prior sales experience but none in the tobacco business. He became Mr. Rickard's direct supervisor. Mr. Payne reported to Brian LeRiche, retail operations manager ("ROM") for the Central Region, which was headed by Chuck Pavona, Central Region Manager. Mr. Payne managed eight TRs including Mr. Rickard.

SMNA claims that, between 1999 and the beginning of Mr. Payne's employment in 2007, Mr. Rickard was treated for several health issues—including type II diabetes, elevated blood pressure, high blood sugar, high triglycerides, and hypertension—and that he was prescribed numerous medications during this time. While Mr. Rickard admits this in his statement of

material facts in dispute (Dkt. No. 45, at 4-5, ¶¶ 19-20), he denies it in response to SMNA's motion for summary judgment (Dkt. No. 44, at 17-18).

Mr. Payne performed periodic "work withs" with each of the TRs he supervised where he would spend one or two days riding with the TR and observing his work.  "Work withs" generally would be followed by "retail audits" where Mr. Payne would survey selected accounts of the TR without advance notice, after which his observations would be documented in a "TR Scorecard."  SMNA claims that the "TR Scorecard" was the primary method RTMs used to evaluate TRs.  Mr. Rickard alleges that Mr. Payne spent more time with him than any other TRs, that "retail audits" could be manipulated by Mr. Payne and were an excuse for Mr. Payne "to fabricate negative information having nothing to do with the amount of sales," and that "TR Scorecards" were used primarily to justify criticism of sales representatives (Dkt. No. 45, at 5-6, ¶¶ 23, 24, 25).

Other than "work withs," biannual contingency audits, periodic regional and national meetings, and occasional crew work, Mr. Payne was not in the physical presence of Mr. Rickard, though he did communicate with Mr. Rickard by phone, letter, email, and text.  SMNA claims that they spoke by phone approximately once per week and emailed as necessary to convey information and documents to each other.  Mr. Rickard claims that they spoke more often and that Mr. Payne used email as a source of harassment.

SMNA points to evaluations and audit reports to claim that Mr. Rickard's job performance was unsatisfactory.  On March 31, 2008, for example, an evaluation stated that Mr. Rickard's job performance needed improvement.  Also, during store audits on July 20 and 21, 2010, Mr. Payne noted that Mr. Rickard had left behind out-of-date product and failed to maintain proper price signage.  Lastly, SMNA claims that Mr. Rickard's lack of effort is

apparent by his last two "TR Scorecards" in 2010.  Mr. Rickard received a "meets expectations" for 2008 and 2009 but a "low meets expectations" for 2010.  Mr. Payne claims that Mr. Rickard ranked near the bottom of the eight TRs he supervised, as evidenced by "TR Scorecards."  Mr. Rickard claims that the evaluation process and audit reports were subjective, arbitrary, and manipulated by Mr. Payne, and that any slowdown in performance was due to deteriorating health brought on by Mr. Payne's supervision.  He also contends that, before Mr. Payne was hired, he was one of the top TRs.

SMNA cites numerous instances of Mr. Payne's personally warning Mr. Rickard about his allegedly poor work performance.  The parties agree, for example, that, in January 2009, Mr. Rickard received a verbal warning from Mr. Payne that he could lose his job and that, in August 2010, Mr. Payne told Mr. Rickard to "get [his] call coverage up" and that "if stores had been hit right [he] wouldn't have the problem" (Dkt. No. 45, at 10, ¶ 44).  On January 31, 2011, Mr. Payne gave Mr. Rickard a final written warning which essentially stated that Mr. Rickard would be fired if his work performance did not improve dramatically.

Mr. Rickard claims it was common knowledge and that even management knew Mr. Payne targeted older employees, as evidenced by their acceptance of his policies.  In fact, Mr. Rickard claims that Mr. Payne was hired to force out older employees.  In support of this theory, Mr. Rickard claims that then-SMNA employee John Blair overheard two conversations between SMNA management: Michael Fioretti and Mr. Pavona purportedly discussing that SMNA needed more turnover and, apparently in a separate meeting, Mr. Payne, Mr. Pavona, and Mr. LeRiche allegedly conspiring to get rid of Mr. Rickard (Dkt. No. 43-4, at 54-55).  Mr. Rickard also claims that SMNA and Mr. Payne's allegedly forcing out other employees over the age of 40 proves that Mr. Payne was hired to discriminate based on age.  Further, Mr. Rickard cites

4

numerous events and statements that he claims show age discrimination on the part of Mr. Payne and SMNA.  For example, Mr. Rickard alleges that Mr. Payne told him: "[y]ou know, you've been here long enough, you've got a lot of age on you and you've been here long enough, and you know that I'm going to hold you at a higher level than I do some of these that have not been here but a year"; and "[y]ou know, you old man, you have a lot of years in" (Dkt. No. 50, at 6-7).

Sometime during June 2010, Mr. Rickard complained to Mr. LeRiche that Mr. Payne twisted his nipple, used abusive language with employees, and rubbed a yellow towel that he had taken from Mr. Rickard on his crotch area before handing it back to Mr. Rickard.  Mr. Rickard testified that the pinching incident occurred on June 23, 2010, and that Mr. Payne had said "[t]his is a form of sexual harassment."  Though Mr. Rickard did not identify any witness to the pinching of Mr. Rickard, he claims that other SMNA employees, Lance Jett and Mr. Fioretti, testified to similar conduct by Mr. Payne, who allegedly pinched at least four other employees. Mr. LeRiche investigated Mr. Rickard's complaints by interviewing Mr. Payne and sending him a letter documenting the complaint and reminding him of SMNA policies prohibiting such conduct.  Though Mr. LeRiche did not disclose Mr. Rickard as the complainer, the parties dispute whether Mr. Payne knew that he was (Dkt. No. 45, at 12, ¶ 52).  Mr. Payne denied touching any employee in such a manner.  Mr. Rickard told Mr. LeRiche to get Mr. Payne "off his back" when making this complaint, but he made no more complaints about similar conduct.

The parties agree that Mr. Payne never pursued a romantic or sexual relationship with Mr. Rickard.  However, Mr. Rickard argues that "nonviolent threats can be acts of perversion for sexual gratification of a person with Sadistic Personality Disorder" (SPD).

On February 1, 2011, Mr. Rickard took personal leave, vacation, sick leave, and job-protected leave under the SMNA's Family and Medical Leave Act policy, and he began

receiving short-term disability payments on February 22, 2011.  The parties agree that SMNA did not tell Mr. Rickard that he must retire, but Mr. Rickard claims that Anne Jordan, an SMNA employee, warned him that if he did not retire he would be terminated, as she had seen the termination paperwork cross her desk.  SMNA denies that it made a decision to terminate Mr. Rickard.

On March 21, 2011, while on leave, Mr. Rickard notified SMNA that he planned to retire effective May 1, 2011.  The parties agree that Mr. Rickard was thinking about retirement before Mr. Payne became his supervisor, requested retirement information from SMNA at least twice between 2009 and 2011, and told coworkers and Mr. Payne that he wished to retire at age 55.  Mr. Rickard claims that his earlier requests for retirement information were only to evaluate his options and that Mr. Payne's supervision fueled his desire to retire at age 55.  On May 1, 2011, Mr. Rickard retired and began receiving retirement benefits, which he and his wife still receive. He was replaced on May 31, 2011.

Mr. Rickard cites numerous incidents, in addition to the ones discussed above, of Mr. Payne's alleged harassment and effort to force him to retire.  During Mr. Rickard's time under Mr. Payne's supervision, Mr. Payne told him: "[y]ou'll like me until I make you mad," allegedly said the first time the two men met; "[y]our territory looks like shit," despite numerous other TRs telling Mr. Rickard his area looked better than theirs; "[w]hen I fire you, you're going to lose your pension, you're going to lose your benefits"; and "I want you to know, if you don't resign today I'm going to fire you.  I forced Glen Yarborough out and I'm going to force you out" (Dkt. No. 45, at 18-25, ¶ 81).  Mr. Rickard also alleges that Mr. Payne, among other things, criticized him for not hitting stores that were not on his list, cussed him, accused him of things he did not do, told him to pull product still in date and cancel big orders, left discontinued product on his

shelves, gave him a written warning while on his way to his uncle's funeral and refused to let him off to visit his brother in ICU, made him clean out his van in the heat, and sent him out to work despite a winter storm advisory (*Id.*).  SMNA argues that the vast majority of these alleged incidents are irrelevant, as they do not show age or gender harassment; that if Mr. Rickard complained at all it was about "management style," not age or gender harassment; and that during all relevant times, SMNA maintained and published policies against unlawful employment discrimination, including unlawful harassment and retaliation.

## II.     Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56;  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)) (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006))).   "Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed."   *Id.*   Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III.      Hostile Work Environment

#### A.      Age-Based

To establish a *prima facie* case of hostile work environment based on age by a non-supervisor co-worker, Mr. Rickard must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment based on his age; (3) the harassment affected a term, condition, or privilege of his employment; and (4) his employer knew or should have known of the harassment and failed to take proper action.   *Peterson v. Scott Cnty.*, 406 F.3d 515, 524-25 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d 1031; *see Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1056 n.6 (8th Cir. 2004) ("Hostile work environment claims, whether based on age or sex, are analyzed under the same general framework." (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158-59 (8th Cir. 1999))).   To state a claim of harassment by supervisors, only the first four factors are required.   *See Weyers*, 359 F.3d at 1056. Mr. Rickard does not argue that Mr. Payne was his supervisor for ADEA or Title VII hostile work environment purposes.   The only element that the parties do not dispute is the first—that

Mr. Rickard, as an individual over 40 years old, belongs to a protected group. The Court will examine the remaining elements.

## 1. Based On Age

As evidence of the second factor—unwelcome harassment based on age—Mr. Rickard offers numerous events and conversations between himself and Mr. Payne. Mr. Rickard contends that Mr. Payne was hired to get rid of him—as an older, long-term employee—and that these events and conversations were part of Mr. Payne's effort to do so. However, SMNA argues that the vast majority of Mr. Rickard's evidence of alleged harassment is not based on age. SMNA identifies only two statements made by Mr. Payne that it admits were related to age: first, Mr. Payne allegedly stated, "[y]ou know, you've been here long enough, you've got a lot of age on you and you've been here long enough, and you know that I'm going to hold you at a higher level than I do some of these that have not been here but a year"; and "[y]ou know, you old man, you have a lot of years in," which Mr. Rickard claims Mr. Payne told him at least twice a month (Dkt. No. 50, at 6-7). Mr. Rickard apparently argues that these statements, plus his contention that Mr. Payne was hired to get rid of older employees, prove that the rest of the alleged harassment toward Mr. Rickard was based on age.

The Court determines that only the statements identified by SMNA were based on age and will conduct the remaining hostile work environment analysis with this in mind. For the reasons that follow, based on the record evidence before the Court, a reasonable juror could not conclude that Mr. Payne was hired to force out older employees. *See Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) ("In order to withstand the motion for summary judgment, [plaintiff] must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation [and] conjecture . . . .'"

(second and third alterations in original) (quoting *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992))).  Without this link, there is no evidence that the other incidents attributed to Mr. Payne and cited by Mr. Rickard were based on age.

In support of his theory that Mr. Payne was hired to force out older employees, Mr. Rickard offers his own belief (Dkt. No. 43-6, at 14 ("My heart told me.")); vague warnings from former co-workers; purported "common knowledge" that SMNA had a policy of forcing out older employees, allegedly supported by testimony of other SMNA employees; and Mr. Payne's actions against him, which Mr. Rickard claims prove his discriminatory intent.  The Court will address each in turn.

First, Mr. Rickard's own belief, without more, is not enough.  *See Moody*, 23 F.3d at 1412 ("Without some evidence other than "[plaintiff's] own naked assertions . . . summary judgment was appropriately granted.").  Second, Mr. Rickard claims that Mr. Blair overheard two conversations between SMNA management: Mr. Fioretti and Mr. Pavona purportedly discussing that SMNA needed more turnover and, apparently in a separate meeting, Mr. Payne, Mr. Pavona, and Mr. LeRiche allegedly conspiring to get rid of Mr. Rickard (Dkt. No. 43-4, at 54-55).   However, there is no evidence linking the two conversations or linking each conversation with age.  Neither the content nor the context of these conversations links them to age.   Mr. Rickard cites only his belief to support his contention that age motivated both conversations.

Third, Mr. Rickard also alleges that SMNA had an unspoken policy of forcing out older employees and that this shows that Mr. Payne forced him out because of his age.  In support of this theory, Mr. Rickard cites the deposition testimony of Mr. Blair, Mr. Fioretti, and Roger Hadley.  Mr. Blair testified and swore in an affidavit that he thought Mr. Rickard was a good TR,

that SMNA fired or pressured other employees over the age of 40 to quit, and that this could have happened to Mr. Rickard or any other employee (Dkt. No. 63). Mr. Blair in his deposition made clear that it was possible for an employee to be targeted by SMNA—Mr. Rickard or anyone else—but had to admit that he did not know for sure that it happened (Dkt. No. 63-1, at 23-24). Mr. Blair's deposition testimony as it relates to alleged age discrimination is contradictory, at best (Dkt. No. 63-1 at 39 ("What I said to you was that I felt—you know, I was gone from the company. And so I felt—you know, Dan [Wiederholt] being thought of—from my standpoint, though, I—honestly, I never really thought it was the age thing. I just don't think Steve [Davis] and Dan [Wiederholt] were very well thought of. That's kind of my—"); Dkt. No. 63-1 at 40 ("They were over 40, but I was never told, They're too old. Go get rid of them or anything like that.")). Mr. Fioretti testified that, as a manager, SMNA pressured him to get rid of Mr. Hadley and that at least three other employees were targeted based on age (Dkt. No. 44, at 27-28). Mr. Fioretti's deposition testimony as it relates to alleged age discrimination of Mr. Rickard, however, is contradictory; he claims at one point that Mr. Rickard was targeted because of professionalism and technology skill concerns, which are not age-based (Dkt. No. 43-21, at 14). Mr. Hadley testified that there was a difference in the way SMNA treated older guys and the younger managers, and that he believed SMNA purposefully got rid of older employees, himself included (Dkt. No. 44, at 24-25). The Court notes that Mr. Hadley's deposition testimony covered his time at SMNA, between 1995 and 2005, which was two years before Mr. Payne was even hired.

At base, neither Mr. Rickard nor any of these other witnesses provide factual evidence to support their beliefs that SMNA targeted employees based on age—as opposed to job performance, professionalism, or technology skills. Even assuming that this testimony creates a

genuine issue of material fact as to whether SMNA had a policy of forcing out older employees, Mr. Rickard has not provided factual evidence that Mr. Payne adhered to that policy or targeted Mr. Rickard based on age, as opposed to other motivations.  For example, Mr. Rickard has not provided performance evaluations by Mr. Payne treating younger employees more favorably than similarly situated older employees or a younger comparator under Mr. Payne's supervision who had worse or similar evaluations but was treated more favorably.

Fourth, Mr. Rickard contends that Mr. Payne's conduct toward him proves his discriminatory intent, as he treated him differently than other employees, spent more time with him than other employees, and manipulated his evaluations and audits.  But in the record before the Court, these contentions once again are based solely on Mr. Rickard's own belief without corroborating evidence.   Again, Mr. Rickard does not support these subjective beliefs of differential treatment with cites to evidence, such as comparators outside the protected group who were treated differently by Mr. Payne.  Even assuming his contentions true, Mr. Rickard also does not cite evidence that Mr. Rickard's differential treatment was based on age, as opposed to experience or job performance.  Further, Mr. Payne's stray remarks regarding Mr. Rickard's age do not bring the remainder of Mr. Payne's conduct under the label of age-based harassment.  *See Casey v. City of St. Louis*, 212 F.3d 385, 385-85 (8th Cir. 2000) (finding that stray references to plaintiff as "old lady" did not make other evidence of "constant, personally belittling" reprimands and criticism age-based, as they were more closely tied to "performance difficulties").  With only Mr. Rickard's belief supporting his theory, it does not rise above mere "speculation" and "conjecture" that Mr. Payne's conduct, though vulgar, inappropriate, and unprofessional, was motivated by age.  *Moody*, 23 F.3d at 1412.

## 2.      Affecting A Term, Condition, Or Privilege Of Employment

Having dealt with the second factor, the Court now turns to the third factor necessary to establish a *prima facie* case of hostile work environment harassment.  "Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'"  *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (citing *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (2003))). "To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive, and courts make this determination by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Breeding* 164 F.3d at 1158 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).  "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Ottman*, 341 F.3d at 760 (quoting *Faragher*, 524 U.S. at 788). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 787-88 (internal citations and quotation marks omitted).  Further, the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted); *see Harris*, 510 U.S. at 21; *Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 962 n.3 (8th Cir. 1993).  Accordingly, once there is evidence of improper conduct and subjective offense, the determination of "[w]hether that

13

conduct rose to the level of [age-based] harassment is usually a factual determination for the jury." *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001) (citing *Howard*, 149 F.3d at 840).

As discussed above, the following were the only statements Mr. Payne directed at Mr. Rickard based on age: "[y]ou know, you've been here long enough, you've got a lot of age on you and you've been here long enough, and you know that I'm going to hold you at a higher level than I do some of these that have not been here but a year"; and "[y]ou know, you old man, you have a lot of years in," which Mr. Rickard claims Mr. Payne told him at least twice a month (Dkt. No. 50, at 6-7). SMNA contends that even the statements based on age were "neither hostile nor derogatory," as they merely acknowledged Mr. Rickard's experience (*Id.*), and, if actually made, were not pervasive, especially considering that Mr. Rickard rarely met or communicated with Mr. Payne.

Mr. Rickard further argues that his alleged deteriorating health is evidence that the harassment against him was severe. According to Mr. Rickard in his response to summary judgment, before he started working for Mr. Payne in 2007, he had not been diagnosed with diabetes, high blood pressure, high blood sugar, hypertension, high triglycerides, or high cholesterol, and did not take any medications; Mr. Rickard claims he was diagnosed with all of these, and also began taking antidepressants, after 2007, when Mr. Payne became his supervisor (Dkt. No. 44, at 17-18). However, in his statement of material facts in dispute, Mr. Rickard admits that, between 1999 and the beginning of Mr. Payne's employment in 2007, he was treated for several health issues—including type II diabetes, elevated blood pressure, high blood sugar, high triglycerides, and hypertension—and that he was prescribed numerous medications during this time (Dkt. No. 45, at 4-5, ¶¶ 19-20). Even so, viewing the facts in the light most favorable

14

to Mr. Rickard by assuming his health issues arose after Mr. Payne became his supervisor, Mr. Rickard fails to connect his deteriorating health to Mr. Payne's statements based on age. Mr. Rickard claims that based on his doctor's statements he believed his stress, and resulting health issues, were caused by working under Mr. Payne. But it is unclear how Mr. Rickard's belief was related to his doctor's statements, and there is no evidence that the stress resulted from Mr. Payne's statements related to age as opposed to other incidents with Mr. Payne not based on age.

The Court determines that a reasonable juror could not conclude that the statements of Mr. Payne that relate to age were severe or pervasive. Even if hostile or derogatory, the statements are more akin to "simple teasing, offhand comments, and isolated incidents" than severe and pervasive harassment. *Faragher*, 524 U.S. at 787-88; *see Peterson*, 406 F.3d at 524 (finding insufficient evidence where plaintiff's supervisor made "regular references to 'old ladies'" and stated that it was "too hard to train old ladies"); *Casey*, 212 F.3d at 385 (finding insufficient evidence where manager engaged in "constant, personally belittling criticism, accompanied by occasional reference to 'old lady'"); *Breeding*, 164 F.3d at 1157 (finding insufficient evidence where co-worker stated that plaintiff was "old enough to be [his] mother" and "we know you are old and you are not going to be here that much longer"). This is because the statements were not physically threatening or humiliating and did not interfere with Mr. Rickard's work performance, *Breeding*, 164 F.3d at 1158, and Mr. Rickard has failed to provide evidence, besides his own belief, connecting the statements to his alleged deteriorating health. *See Moody*, 23 F.3d at 1412 ("Without some evidence other than "[plaintiff's] own naked assertions . . . summary judgment was appropriately granted.").

### 3. Knew Or Should Have Known And Failed To Take Proper Action

Lastly, even if the statements based on age affected a term, condition, or privilege of Mr. Rickard's employment, Mr. Rickard provides no evidence that SMNA knew of the harassment and failed to take proper action—the fourth factor required for non-supervisor claims. In fact, in his deposition Mr. Rickard admitted that he never complained to anyone at SMNA that Mr. Payne was discriminating against him on the basis of his age (Dkt. No. 38-2, at 33). While Mr. Rickard's briefs deny this, Mr. Rickard cannot create a genuine issue of material fact by pointing to his own contradictory testimony. *See Bass v. SBC Communications, Inc.*, 419 F.3d 870, 872 (8th Cir. 2005). Regardless, Mr. Rickard's briefs cites only complaints about Mr. Payne's "management style"—such as requiring Mr. Rickard to do certain things and texting him while he was on leave to come back to work—and other incidents related to his gender discrimination claim, not age discrimination.

Thus, because Mr. Rickard has failed to show that the statements based on age affected a term, condition, or privilege of his employment and that SMNA knew of the harassment and failed to take proper action, the Court grants SMNA's motion for summary judgment as to Mr. Rickard's age-based hostile work environment claim. The Court notes that, even if Mr. Rickard contended Mr. Payne were his supervisor for ADEA or Title VII hostile work environment purposes, the Court would reach the same outcome.

### B. Sex-Based

To state a *prima facie* claim for sex-based hostile work environment harassment by non-supervisory co-workers, a plaintiff must establish: "(1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or

privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).  To state a claim of sex-based harassment by supervisors, only the first four factors are required.  *See Anderson v. Family Dollar Stores of Ark.*, 579 F.3d 858, 862 (8th Cir. 2009).  Again, Mr. Rickard does not argue that Mr. Payne was a supervisor for Title VII hostile work environment purposes.

The parties agree that the first and second factors have been met.  Even so, SMNA argues that Mr. Rickard has failed to establish the third, fourth, and fifth factors.

To prove that alleged harassment was "based on sex," Mr. Rickard must show that (1) the harassment was motivated by sexual desire, (2) the harassment was motivated by general hostility to the presence of the same gender in the workplace, or (3) the offender treated the opposite sex more favorably, as shown through direct comparative evidence.  *See McCown v. St. John's Health Sys.*, 349 F.3d 540, 543 (8th Cir. 2003).  "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'"  *Oncale*, 523 U.S. at 81 (alterations in original).  Further, "[s]ame sex harassment claims differ from those between males and females because the latter 'typically involve[] explicit or implicit proposals of sexual activity,' which create a presumption that the underlying conduct was based on sex."  *McCown*, 349 F.3d at 543 (citing *Oncale*, 523 U.S. at 80).  "However, this presumption is applicable only if there is credible evidence to show that the alleged harasser is sexually attracted to the plaintiff.  Consequently, without this presumption, a same-sex harassment plaintiff needs other methods to prove that the conduct was based on sex.  *Id.*

Mr. Rickard does not argue that Mr. Payne's conduct was motivated by general hostility to the presence of the same gender in the workplace or that he treated the opposite sex more favorably.  Instead, in an attempt to establish a basis of sex for all of Mr. Payne's conduct, Mr. Rickard diagnoses Mr. Payne with Sadistic Personality Disorder ("SPD"), without medical or expert support.  He examines the definition of SPD and Mr. Payne's conduct—such as twisting his nipple and creating false reports—and, based on his own non-medical opinion, concludes that Mr. Payne received "perverse gratification" and sexual excitement by tormenting Mr. Rickard. This allegation is inappropriate, without support in independent fact, law, or expert opinion, and the Court does not accept it.  As presented on this record, it does not rise above mere "speculation" and "conjecture."  *Moody*, 23 F.3d at 1412.

Evidence of unwelcome harassment that might arguably be based on sexual desire without the SPD theory includes Mr. Rickard's allegations that Mr. Payne twisted his nipple and stated "[t]his is sexual harassment," and took a yellow towel from Mr. Rickard with which he wiped his crotch area before giving it back to Mr. Rickard.  Mr. Rickard further alleges that Mr. Payne has exhibited similar behavior with other male employees.

SMNA argues that the nipple twisting and towel incidents, if they occurred, were not based on sexual desire.  The parties agree that Mr. Payne never attempted a sexual relationship with Mr. Rickard, and Mr. Rickard provides no evidence and, in fact, admitted in deposition that he does not believe that Payne is homosexual or sexually attracted to men.  Without evidence of Mr. Payne's sexual desire, a reasonable juror cannot conclude that the alleged incidents were based on sex.  *See McCown*, 349 F.3d at 541-42 (granting summary judgment after finding "no evidence in the record to demonstrate that [supervisor] was homosexual and motivated by sexual desire toward [plaintiff]" where male supervisor allegedly grabbed male plaintiff by the waist,

chest, and buttocks; grinded his genitals against plaintiff's buttocks in simulated intercourse; told

plaintiff to "squeal like a pig, or a woman," and made other lewd comments; attempted to stick

the handle of a shovel and a tape measure in plaintiff's anus; and kicked plaintiff in the

buttocks); *Linville v. Sears, Roebuck & Co.*, 335 F.3d 822, 824 (8th Cir. 2003) (concluding that

male employee back-handing another male employee's scrotum on at least five occasions did not

support a hostile work environment claim because it was not based on sex).

Even if Mr. Payne's alleged harassment was based on sex, it did not affect a term,

condition, or privilege of Mr. Rickard's employment.   Like hostile work environment claims

based on age, conduct based on sex must be "severe or pervasive," not merely offensive and

undesirable.   *See Oncale*, 523 U.S. at 81 ("Common sense, and an appropriate sensitivity to

social context, will enable courts and juries to distinguish between simple teasing and

roughhousing among members of the same sex, and conduct which a reasonable person in the

plaintiff's position would find severely hostile or abusive.").   The two incidents of "sexual

harassment" advanced by Mr. Rickard that were arguably based on sex, while vulgar,

inappropriate, and unprofessional, were not severe or pervasive as the controlling case law has

defined those terms.   *See, e.g.*, *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862

(8th Cir. 2009) (holding that conduct assumedly based on sex was not sufficiently severe or

pervasive where supervisor rubbed plaintiff's shoulders and back during training sessions, called

her "baby doll," accused her of wanting to be "one of [his] girls," suggested that she should be in

bed with him and a Mai Tai in Florida, and insinuated that she could go farther in the company if

she got along with him); *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir.

2000) (holding that conduct was not sufficiently severe or pervasive, even assuming it was based

on a race or gender-based animus, where plaintiff complained that supervisor and co-worker

19

ignored her, isolated her, damaged her car, shoved her against a wall, and threatened her with bodily harm); *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 737 F. Supp. 1070, 1082-83 (E.D. Mo. 1990), *aff'd*, 985 F.2d 564 (8th Cir. 1991) (holding that conduct undisputedly based on sex was not "severe and persistent" where alleged harasser, among other things, kissed plaintiff two times against her will, touched plaintiff's thigh on two occasions against her will, told off-color jokes, and invited himself to dinner with her).

Additionally, under the non-supervisor standard, Mr. Rickard has not shown that SMNA failed to take prompt and effective remedial action.  It is undisputed that Mr. Rickard complained to SMNA about the nipple twisting and towel incidents, and thus SMNA knew of the alleged harassment.  Mr. Rickard argues that SMNA, in response to his complaint, should have done more than interviewing and writing Mr. Payne a letter informing him that a complaint was filed against him and restating SMNA's policy against sexual harassment.  After reporting these incidents, however, Mr. Rickard made no further complaints to SMNA about sex-based harassment by Mr. Payne and cited no further incidents arguably based on sex here.  Based on this evidence, the Court concludes as a matter of law that SMNA's remedial action was prompt and effective.

Accordingly, because Mr. Rickard has failed to meet the third, fourth, and fifth factors, summary judgment is granted as to Mr. Rickard's sex-based hostile work environment claim, whether analyzed under the non-supervisor or supervisor standard.

## IV.     Constructive Discharge

"To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in [his] situation would find the working conditions intolerable, and (2) the employer intended to force [him] to quit."  *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 534 (8th Cir. 2008)

(quoting *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 619 (8th Cir. 2007)).  Further,

a plaintiff must grant his employer "a reasonable opportunity to correct the intolerable condition"

before the plaintiff terminates his employment.  *Id.* (quoting *Turner v. Honeywell Fed. Mfg. &

Techs., LLC*, 336 F.3d 716, 724 (8th Cir. 2003)).  "The intolerability of working conditions is

judged by an objective standard, not the employee's subjective feelings."  *Sanders v. Lee Cnty.

Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012).  Accordingly, to prevail on a constructive

discharge claim, a plaintiff must show that his "working conditions were rendered so

objectionable that a reasonable person would have deemed resignation the only plausible

alternative."  *Tatom v. Ga.-Pac. Corp.*, 228 F.3d 926, 932 (8th Cir. 2000).

To begin, the Court considers only those statements based on age and sex, as determined

above, in its constructive discharge analysis.  This is because an alleged constructive discharge is

not illegal unless achieved through harassment based on a discriminatory animus; this is true

even if the Court finds that Mr. Rickard's working conditions were intolerable because of non-

discriminatory harassment and SMNA intended to force him to quit for non-discriminatory

reasons.  *Sterling v. Drug, Inc. v. Oxford*, 743 S.W.2d 380, 383 (Ark. 1988) ("[W]hen an

employee's contract of employment is for an indefinite term, either party may terminate the

relationship without cause or at will," unless an exception such as discharging an employee in

violation of general public policy applies); *Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d

784, 790 (Ark. 2001) (holding that such public policy exceptions must be outlined in statute).

Further, the Eighth Circuit has held that a constructive discharge claim has a higher

evidentiary burden than a hostile work environment claim.  *See O'Brien v. Dep't of Agric.*, 532

F.3d 805, 811 (8th Cir. 2008) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("A

hostile-environment constructive discharge claim entails something more [than an actionable

21

hostile work environment].”); *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004) (recognizing that a plaintiff has a higher burden of evidentiary burden when seeking to establish a constructive discharge than an adverse employment action)).  In other words, if plaintiff’s allegations of age- and sex-based harassment are insufficient to establish a hostile work environment, his constructive discharge claim based on the same theories also fails.  *Wilkie v. Dep’t of Health & Human Servs.*, 638 F.3d 944, 954 (8th Cir. 2011) (quoting *O’Brien*, 532 F.3d at 811).  Thus, because the Court grants summary judgment as to Mr. Rickard’s age- and sex-based hostile work environment claims, it also grants summary judgment as to Mr. Rickard’s constructive discharge claim.

Even if Mr. Rickard had met the hostile work environment “severe and pervasive” standard, the Court would find that he fails to meet the higher constructive-discharge standard. Specifically, Mr. Rickard failed to show that a reasonable person in his position would find the working conditions intolerable.  “Constructive discharge requires considerably more proof than an unpleasant and unprofessional environment.”  *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 936 (8th Cir. 2002) (quoting *Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002)).  Again, the only statements Mr. Payne directed at Mr. Rickard based on age were: “[y]ou know, you’ve been here long enough, you’ve got a lot of age on you and you’ve been here long enough, and you know that I’m going to hold you at a higher level than I do some of these that have not been here but a year”; and “[y]ou know, you old man, you have a lot of years in,” which Mr. Rickard claims Mr. Payne told him at least twice a month (Dkt. No. 50, at 6-7).  And the only incidents related to sex were allegations that Mr. Payne twisted his nipple and stated “[t]his is sexual harassment,” and took a yellow towel from Mr. Rickard with which he wiped his crotch area

before giving it back to Mr. Rickard.  A reasonable person would not find Mr. Rickard's working conditions intolerable, even if it was unpleasant and unprofessional.

### V.      Disparate Treatment Based On Age

Mr. Rickard alleges that SMNA treated him differently based on his age.  Mr. Rickard can establish a *prima facie* claim of age discrimination based on disparate treatment either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). However, under both analyses, Mr. Rickard must identify an adverse employment action against him.  *Torgerson*, 643 F.3d at 1043-44 (defining direct evidence as evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the *adverse employment action*" (internal quotation marks omitted)); *Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) ("To establish a prima facie case for age discrimination, [a plaintiff] must show he . . . suffered an adverse employment action." (alterations in original)). Because Mr. Rickard has failed to prove constructive discharge, he must point to another adverse employment action against him.  Mr. Rickard argues that Mr. Payne's conduct toward him, such as spending more time with him than other employees and manipulating his evaluations, qualifies as an adverse employment action.  However, as discussed above, Mr. Rickard has not provided sufficient evidence to support these allegations, much less to support a claim that they were actions taken based on Mr. Rickard's age.  Because Mr. Rickard has failed to demonstrate a *prima facie* case, the Court need not proceed to the remaining steps of the *McDonnell Douglas*

analysis.  For this reason, summary judgment is granted as to Mr. Rickard's disparate treatment claim against SMNA.

### VI.    Retaliation

"To establish a *prima facie* case of retaliation [under Title VII], an employee has the initial burden of establishing retaliation by showing that (1) [he] engaged in protected conduct; (2) [he] suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2521 (2013).  "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . .  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

Mr. Rickard argues that SMNA retaliated against him for complaining of Mr. Payne's sexual harassment.  Mr. Rickard has failed to show any of the factors.

As for the first factor, an employee does not engage in protected conduct by complaining of comments that "[n]o reasonable person could have believed . . . violated Title VII's" prohibition against sexual harassment.  *See Clark Cnt. Sch. Dist. v. Breeden*, 532 U.S. 268, 269-71 (2001); *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 544 (8th Cir. 2008) ("[T]he single, relatively tame comment at issue here is insufficient as a matter of law to support an objectively reasonable belief it amounted to unlawful sexual harassment" and thus plaintiff failed to show a statutorily protected activity); *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001) ("A plaintiff must not only show that [he] *subjectively* (that is, in

good faith) believed that [his] employer was engaged in unlawful employment practices, but also that [his] belief was *objectively* reasonable in light of the facts and record presented." (citations omitted) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). As discussed above, the two incidents of arguably sex-based harassment of which Mr. Rickard complained to SMNA did not violate Title VII, and this Court concludes no reasonable person could have believed they did. *See, e.g.*, *Whatley v. United Parcel Serv., Inc.*, 2009 WL 3756624, at *21 (E.D. Mo. Nov. 6, 2009 (granting summary judgment to employer and finding "only two insignificant acts which include [a female subordinate] calling [a male subordinate] fat and also patting [the male subordinate] on the rear . . . insufficient to support an objectively reasonable belief that unlawful discrimination occurred"; *Boone v. Larson Mfg. Co.*, 299 F. Supp. 2d 1008, 1021-22 (D.S.D. 2003) ("The Court concludes that no reasonable person could have believed that the two isolated incidents of [employee] commenting about [plaintiff's] breasts violated Title VII's standard.").

Even if a reasonable person could have believed that the conduct of which Mr. Rickard complained violated Title VII, Mr. Rickard fails to show that a materially adverse employment action was taken against him. Mr. Rickard cites his alleged constructive discharge, as well as his failing health, as materially adverse employment actions. However, as discussed above, Mr. Rickard has not demonstrated a genuine issue of material fact sufficient to survive summary judgment on his constructive discharge claim and has not sufficiently linked his allegedly deteriorating health to Mr. Payne's sex-based conduct.

Lastly, even if Mr. Rickard had engaged in protected conduct and been constructively discharged, he also fails to demonstrate that his complaint was the "but-for" cause of Mr. Payne's subsequent conduct, which Mr. Rickard claims eventually forced him to retire. To

begin, there is no evidence in the record before the Court that Mr. Payne knew Mr. Rickard was the one who made the complaint; Mr. LeRiche only told Mr. Payne that a complaint had been made against him.  Without knowing that Mr. Rickard made the complaint, it is difficult to see how a reasonable juror could view the complaint as the "but-for" cause of Mr. Payne's subsequent conduct.  *See Porter v. City of Lake Lotawana*, 651 F.3d 894, 899 (8th Cir. 2011) (finding that "the causation element of the prima facie case requires proof that decision maker was aware of plaintiff's protected activity at time of adverse employment action" (citing *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006)).

For these reasons, the Court grants summary judgment as to Mr. Rickard's retaliation claim against SMNA.

* * *

In sum, summary judgment is granted in favor of SMNA as to Mr. Rickard's claims against SMNA of hostile work environment, constructive discharge, disparate treatment, and retaliation.  These claims are dismissed with prejudice, and Mr. Rickard's breach of contract claim is dismissed without prejudice.

SO ORDERED this 25th day of November, 2013.


_____
Kristine G. Baker
United States District Judge